IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| LACHAN HOWELL and | § | |
| RICHARD HOWELL | § | PLAINTIFFS |
| | § | |
| v. | § | CAUSE NO. 1:09CV7 LG-JMR |
| | § | |
| IMPERIAL PALACE OF MISS., LLC, | § | |
| SANDERS-HYLAND CORP., and | § | |
| J.H. HAYNES ELECTRIC CO., INC. | § | DEFENDANTS |
| | | |
| IMPERIAL PALACE OF MISS., LLC | § | |
| and ROY ANDERSON CORP. | § | THIRD-PARTY DEFENDANTS |
| | § | |
| v. | § | |
| | § | |
| SANDERS-HYLAND CORPORATION | § | CROSS-DEFENDANT |

MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Second Motion [128] of Imperial Palace and Roy

Anderson Corporation for Summary Judgment Against Sanders-Hyland Corporation.

The movants present a single issue - whether the Subcontractor Work Order between

Roy Anderson and Sanders-Hyland required Sanders-Hyland to provide an insurance

policy that named movants additional insureds on a primary, non-contributory basis.

The matter has been fully briefed. After due consideration of the parties' submissions,

the Court concludes that the movants are entitled to summary judgment.

FACTS AND PROCEDURAL HISTORY

According to their Amended Complaint, Plaintiffs Lachan and Richard Howell

and their daughter were staying at the Imperial Palace. At the time of their stay,

repairs to the hotel property were taking place. The contractor, Roy Anderson

Corporation, had a number of subcontractors working on the property.  On the evening of January 14, 2006, while exiting the Imperial Palace, Lachan Howell fell in a chipped out area of concrete approximately 3.5 inches deep and 9 feet long just outside the hotel entrance.  Plaintiffs allege there was no warning of this dangerous condition.  They further allege that Lachan Howell suffered severe injuries to her left ankle as a result of the fall.   Plaintiffs brought suit against Imperial Palace, Sanders-Hyland Corporation and J.H. Haynes Electric Company.  In turn, Imperial Palace and Roy Anderson Corporation brought third-party claims concerning indemnification against Sanders-Hyland.

DISCUSSION

Roy Anderson and Sanders-Hyland entered into two agreements that are relevant here.  The first was a Work Order Subcontract Agreement that set out the terms of the parties' relationship in regard to the IP project.  The second was a Subcontractor Work Order for "stone tile and tops" for certain areas of the IP.  Both were made effective November 10, 2005.

The Work Order Subcontract Agreement contains a provision requiring Sanders-Hyland to purchase insurance that would provide "at a minimum . . . coverage of at least $1,000,000 to [Roy Anderson] and [IP] as an additional insured (on a primary non-contributory basis in a form approved by [Roy Anderson]). . . ."

The Stone Work Order provided that its terms would control in the event there was a conflict between it and the Work Order Subcontract Agreement. The Stone Work Order contained an "Owner's Addendum to Contract," in which the IP required

Sanders-Hyland to,

> maintain a policy of general liability insurance in an amount of not less than Two Million Dollars with a $1,000,000 Umbrella; and [ ] name Imperial Palace of Mississippi, LLC and Roy Anderson Corp as additional insureds on said insurance policy. . . .

The question presented is whether the Stone Work Order provision required Sanders-Hyland to provide insurance that was primary to any other insurance, or if, in the absence of the "primary non-contributory" language, it required insurance that was merely contributory or perhaps secondary to other insurance.

Courts are obligated to enforce a contract that is executed by legally competent parties containing clear and unambiguous terms, and parties are bound by its provisions. *Ivison v. Ivison*, 762 So. 2d 329, 335 (¶ 16) (Miss. 2000). "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Id.* The Court "is not concerned with what the parties may have meant or intended but rather what they said, for the language employed in a contract is the surest guide to what was intended." *Id.* at (¶ 17). The meaning of a contract is determined using an objective standard, rather than taking into consideration a subjective intent or a party's belief that may conflict therewith. *Palmere v. Curtis*, 789 So. 2d 126, 131(¶ 10) (Miss. Ct. App. 2001) (citation omitted).

The Mississippi Supreme Court has established a three-tiered process for contract interpretation:

> First, we look to the "four corners" of the agreement and review the actual language the parties used in their agreement. [*Pursue Energy Corp. v. Perkins*, 558 So. 2d 349,] 352 [(Miss. 1990)]. When the language of the contract is clear or unambiguous, we must effectuate the parties'

intent. *Id*. However, if the language of the contract is not so clear, we will, if possible, "harmonize the provisions in accord with the parties' apparent intent." *Id*. Next, if the parties' intent remains uncertain, we may discretionarily employ canons of contract construction. *Id*. at 352-53 (citing numerous cases delineating various canons of contract construction employed in Mississippi). Finally, we may also consider parol or extrinsic evidence if necessary. *Id*. at 353.

*West v. West*, 891 So.2d 203, 210-11(¶ 14) (Miss. 2004).

The agreements at issue in this case contain terms that conflict in regard to the amount of insurance Sanders-Hyland was required to provide. In addition, they differ in that the first requires that in addition to naming IP and Roy Anderson as additional insureds, the coverage must be "on a primary non-contributory basis in a form approved by Roy Anderson." The Stone Work Order does not contain this additional language. Accordingly, the terms of the Stone Work Order control as to the amount of coverage, but there is no conflict in regard to the type of coverage. In other words, the Stone Work Order increased the coverage required, but did not change any other term of the agreement.

In the Court's opinion, the contractual language here is sufficiently clear and should be interpreted to require Sanders-Hyland to provide insurance naming the movants additional insureds on a primary, non-contributory basis. A plain reading shows that Sanders-Hyland was required to provide $2 million in general liability coverage, plus an excess, or umbrella, layer of $1 million before performing work under the subcontract. When insurance is provided as part of the consideration for construction work, it should be viewed as primary insurance. *See Amer. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 439 (5th Cir. 2003). Further, the

Stone Work Order did not alter the requirement that Sanders-Hyland's policy name IP and Roy Anderson additional insureds on a "primary non-contributory basis." This requirement remained in effect despite the increase in coverage amount. Accordingly, the movants have shown that they are entitled to summary judgment on the question presented. Their Motion will be granted.

Motion to Strike Exhibit Three:

Sanders-Hyland has objected to the Court's consideration of movant's exhibit three, which is a letter from Amerisure to Geoff Schrader of American Contractors Insurance Group on the basis that the letter is unattested to and inadmissible hearsay. Because the Court did not find it necessary to rely on exhibit three, the objections thereto are moot.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Second Motion [128] of Imperial Palace and Roy Anderson Corporation for Summary Judgment Against Sanders-Hyland Corporation is **GRANTED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion [142] to Strike Exhibit Three to IP and RAC's Second Motion for Summary Judgment, filed by Sanders-Hyland, is **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED** this the 11th day of January, 2011.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE